IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT, IN
AND FOR PUTNAM COUNTY,
FLORIDA

**KENDRA BUSH,**

        **Plaintiff,**

v.

**HOMER "GATOR" DELOACH in his Official
Capacity as SHERIFF, PUTNAM COUNTY,
FLORIDA,**

        **Defendant.**
_____/

**CASE NO.: 22-CA-212**
**FLA BAR NO.: 0739685**

## AMENDED COMPLAINT

Plaintiff, KENDRA BUSH, hereby sues Defendant, HOMER "GATOR" DELOACH, in

his Official Capacity as SHERIFF, PUTNAM COUNTY, FLORIDA and alleges:

## NATURE OF THE ACTION

1.      This is an action brought under the Florida Whistleblower Act codified at Chapter

112, Florida Statutes, Chapter 760, Florida Statutes and 42 U.S.C. §2000e et seq.

2.      This action involves claims which are, individually, in excess of Thirty Thousand

Dollars ($30,000.00), exclusive of costs and interest.

## THE PARTIES

3.      At all times pertinent hereto, Plaintiff, KENDRA BUSH, has been a resident of the

State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to

her reports and/or objections to malfeasance, misfeasance, gross misconduct and/or gross

negligence by the Defendant and she was the victim of retaliation thereafter. Plaintiff has also been

the victim of discrimination based on her gender and race and she was subject to retaliation after reporting discrimination and retaliation and filing this lawsuit.[1]

    4.    At all times pertinent hereto, Defendant, HOMER "GATOR" DELOACH, in his Official Capacity as SHERIFF, PUTNAM COUNTY, FLORIDA, has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

    5.    Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

    6.    Plaintiff, an African American female and protected whistleblower, began her employment with Defendant on or about August 31, 2010.  She left the employment of the Defendant in December 2014 and returned in March 2015.  She held the position of Corporal Corrections Deputy at the time of her constructive termination on January 20, 2022.  During the entirety of Plaintiff's employment, she worked in Defendant's Jail.

    7.    Despite her stellar work performance during her employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms, and conditions of employment, and was held to a different standard because of her whistle blower status. Further, Plaintiff has been retaliated against because she disclosed Defendants' gross mismanagement,

---

[1]    Plaintiff has filed a charge of discrimination in December 2022 addressing ongoing discrimination and retaliation against her based race and sex and due to the filings of charges of discrimination and this lawsuit based on Defendant's effort to have her decertified as a law enforcement officer after Defendant was unsuccessful in having her criminally prosecuted.

malfeasance, misfeasance, gross waste of public funds, gross neglect of duty, and/ or violation of one or more laws, rules, or regulations.

8.    Additionally, and despite her stellar work performance during her employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms, and conditions of employment, and was held to a different standard because of her race and gender and because she reported discrimination and was the victim of retaliation thereafter.

9.    The disparate treatment and retaliation came at the hands of specifically but not limited to Undersheriff Colonel Wells ("Colonel Wells"), Major Scott Surrency ("Major Surrency"); Sergeant Clifford Dean ("Sergeant Dean"), Lieutenant Ray Johnson ("Lieutenant Johnson"), Deputy Michael Slocum ("Deputy Slocum"), Lieutenant Bill Hamby ("Lieutenant Hamby"), Sergeant David Looney ("Sergeant Looney"), Captain Miller f/n/u ("Captain Miller"), Captain Ryan Dunn ("Captain Dunn"), Corporal Dakota Chancy ("Corporal Chancy") and Sergeant Robin Rash ("Sergeant Rash"), all white males.

10.    Plaintiff was a loyal and dedicated employee for eleven years.

11.    In March 2021, after Plaintiff had been requesting to work in Booking for around one year and to be trained to do so, Plaintiff was reassigned to work in Booking in Defendant's Jail because

12.    Lieutenant Bill Hamby and Sergeant David Looney, both white males, however, did not want to teach Plaintiff how to run the Booking desk. Plaintiff repeatedly asked them to teach her and they would give lip service to doing so.  New hire white deputies were trained on working the Booking area but not Plaintiff.

13.    Because of their refusal to teach her, in late March/early April 2021, Plaintiff voiced her concerns about not being trained to Captain Dunn and Captain Pardon f/n/u, a white male.

Captain Dunn and Captain Pardon had a meeting with Lieutenant Hamby and Sergeant Looney after they had reviewed the cameras and realized Plaintiff was telling the truth.

14. Subsequent to this meeting, Sergeant Looney and Lieutenant Hamby started shunning Plaintiff and were constantly whispering between themselves around Plaintiff, excluding her from their conversations. Lieutenant Hamby and Sergeant Looney would also go to other Corporals and officers, all of whom were white, if they needed something done instead of to Plaintiff, which would have been a learning experience for Plaintiff.

15. Plaintiff ultimately learned the duties of the Booking desk through being self-taught, primarily, but it took her significantly longer than the other, newer white deputies who were taught the responsibilities of the position shortly after being assigned to Booking.

16. On June 23, 2021, Plaintiff was contacted by Sgt. Rash who began speaking to her in a belittling manner about moving her car. Plaintiff moved car.

17. Sometime between June 26 and around July 1, 2021, Plaintiff delivered to her supervisors, Lt. Yoder and Major Surrency, a memorandum about her interactions with Rush on June 23, 2021 reporting that Rash treated her differently than other Corporals, Sergeants and line officers. She reported that other officers park in those same parking spaces and he never said anything to them including Corporal Jones, Corrections Deputy Brady and also Corrections Deputy Richie, who are all white and parked in that same area on a daily basis. She reported that as soon as Plaintiff parked in that same area, it became a problem for Rash.

18. She reported in writing at that time through the delivery of a memorandum identified above that Rash was prejudiced and biased towards her. She also reported that she believed that she was being targeted because it "is promotion time, and some people do whatever to stop other people from promoting to a position. Sergeant (Sgt) Rash was just

4

discussing me on June 14, 2021, with another Supervisor and the other Supervisor stated he too was writing a Memorandum on me." She further stated, regarding the corrective counseling memorandum written about the incident, that just because a writing was made, did not mean "they are telling the truth about the incident."

19.     Plaintiff was also called into a meeting with Lt. Yoder and Major Surrency in either late June or early July, 2021 during which she was asked questions about the incident with Rash and, in response, she told them verbatim everything stated in the memorandum referenced above that had been given to them.

20.     After she told them about the incident with Rash, Yoder and Surrency began discussing an old prior incident where they claimed Plaintiff took an inmate to medical and accused her of not letting the officer on duty know the inmate was there, which was false. After Plaintiff reported this, she was targeted and fired.

21.     On or about July 1, 2021, Plaintiff took the Sergeant test and passed. The next stage of the interview process was the oral board.

22.     In or around July 2021, Plaintiff was told by Captain Ryan Dunn, a Caucasian male, to arrive for the Oral Board at 12:30 pm. Around 11:00 am. Lieutenant Karly Yoder, a white female, called Plaintiff and told her to be there in 20 minutes. Plaintiff was over 20 minutes away and was unable to meet the new deadline. Plaintiff explained this to Lieutenant Yoder and told her that Captain Dunn had said to arrive at 12:30 pm.

23.     As a result of the acceleration of her interview time, Plaintiff arrived late to the oral board as a result. Although Plaintiff passed her test, she did not proceed any further as Plaintiff's name was never given to the Sheriff for consideration for promotion.

24.     Major Surrency, the top ranked official over the Defendant's Jail, and Captain Dunn, who also worked in Defendant's Jail, were responsible for forwarding names to the Sheriff for consideration for promotion but omitted Plaintiff.  Surrency and Dunn sent the names of five white employees to the Sheriff instead.  At least one employee, Shea Kingston, should never have been allowed to even take the test for Sergeant as he had just returned to the Defendant's employment and was on probation.  Defendant's promotion rules state that an employee applying for a promotion cannot be on probation.  Defendant waived Kingston's probation in order to allow him to sit for the Sergeant test.

25.     There were two sergeant positions open and available at that time. The positions were given to Corporal Clifford Dean and Deputy Callahan, both white males.

26.     Plaintiff outranked Deputy Callahan as he held the rank of a regular line officer and he would have failed the test if no curve point system had been added. To justify hiring Callahan, Defendant gave him the title of "Corporal" when he had never been promoted into the Corporal position.

27.     The evening after the written tests, July 1, 2021, Captain Dunn called Plaintiff to speak with her about the test results. Captain Dunn said he had to take eight questions off the test and then curved the test to help officers pass the test. Captain Dunn told Plaintiff, "So, you passed the test." Plaintiff was the only African American female to take and pass the examination.  Dunn made it sound as if Plaintiff would not have passed the test without the curve.

28.     However, two days later, July 3, 2021, Plaintiff learned through Lieutenant Breckenridge that she was one of three deputies who had passed the test without the aid of the curve.

29.     On July 29, 2021, Plaintiff learned that Dean and Callahan were promoted.

6

30.     Shortly thereafter, Plaintiff sent an email to Undersheriff Colonel Wells stating that although she did not proceed past the oral board, she had been one of the three to pass the test without the aid of the curve but was not selected to proceed further through the promotional process.

31.     In or around October 2021 Plaintiff reported that two white officers, Deputies Trevor Bishop and Walker, did not perform their recount to Lieutenant Johnson. This was a safety issue for the Jail.

32.     The next day, Plaintiff asked Lieutenant Johnson, a white male, what happened with the two officers who did not perform the recount as required and he confirmed that Plaintiff was correct, and the two white officers did not perform the recount. Plaintiff asked if they were going to be placed under an internal investigation and terminated such as the Defendant did to Deputy Haynes, an African American male and Deputy Session, an African American male. She asked "you did Haynes and Session like that [referring to investigating and firing Haynes and Session], so are you going to do that to these officers?" The retaliation against Plaintiff increased thereafter.

33.     In or around December 2021, Plaintiff was put under two Internal Investigations: one was for an incident that occurred on November 9, 2021 for leaving her job without notifying a supervisor, which was either false or contrived and Plaintiff was cleared of these allegations the day she resigned, and the second was for an incident that occurred on November 22, 2021 for tasing an inmate, which concluded with Defendant attempting to have Plaintiff arrested but the State Attorney refused to prosecute her.

34.     Plaintiff's tasing of the inmate was within policy and she did nothing wrong. However, Plaintiff was told she may face criminal charges for simple battery for tasing the inmate, which is preposterous.

35.     At the same time that Plaintiff properly used her taser on this inmate, a white deputy, Deputy Bishop, is clearly seen on the video of the incident grabbing the inmate by the throat, as if to choke him.  He was not investigated nor terminated although he clearly violated Defendant's policy and engaged in excessive force.

36.     This was Plaintiff's first time tasing an inmate and she was in the scope of her duties when she did so. The inmate did not require medical attention and had no marks or bruises, in fact the taser prongs never touched the inmate's skin but touched his shorts nor did the inmate file a complaint.

37.     Moreover, in or around January 2022, Certified Defense Tactics Instructor-Sergeant Dennis Haynes, a white male, told Plaintiff that he viewed the camera footage and told his superiors that it was not excessive use of force.

38.     In 2021, a white female officer, Deputy Green, hit an African American inmate in the back of the head with a sandwich and her punishment was attending anger management classes. She did not face criminal charges.

39.     In 2020, a white female deputy, Sgt. Greco, wrongfully tased an inmate when he did not pose a threat to her but she too was not disciplined.

40.     In 2020, then Deputy Stephen Callahan, then Corporal Greco, then Deputy Kingston, and then Corporal Richie, all of whom are white, while transporting a female inmate to the housing area, used excessive force against this inmate while she was fully restrained with handcuffs and shackles by hitting her, slamming her to the ground and grinding her face into the

pavement.  The inmate was bloody and obviously injured.  No disciplinary actions were taken against these officers.

41.    In 2020 or 2021, then Corporal Breckenridge and then Corporal Yoder drug an inmate over 200 feet to the medical unit after the black inmate told them he could not walk.  After this incident, Yoder said that she knew that this was wrong but had been directed to assist in dragging the inmate by the senior Corporal Breckenridge.

42.    In the 2017/18 time period, Breckenridge grabbed a black male inmate by his neck and attempted to drag him up two flights of stairs resulting in injuries to the inmate.  Breckenridge kicked another black inmate in the 2019/20 time period for no legitimate reason.

43.    All of these officers are white and no actions were taken against them.

44.    Plaintiff was constructively terminated on January 20, 2022, as no reasonable person would have remained in the employment of Defendant after being physically and mentally exhausted from being scrutinized, harassed, singled out, lied to, and treated unfairly by her co-workers and supervisors. Additionally, Plaintiff was prescribed medication by her primary physician due to hair loss, anxiety, and stress that was occurring at the time of her termination. Her physician also told her that she needed to leave her job because it was going to kill her.

45.    Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the laws referenced above.

**COUNT I**
**PUBLIC WHISTLEBLOWER RETALIATION**

46.    Paragraphs 1-10, 13-45 above are incorporated herein by reference.

47.    This count sets forth a claim against Defendant under §112.3187, et seq., Florida Statutes.

48.     Plaintiff was a public employee protected under the provisions of Chapter 112, Florida Statutes.

49.     As stated more specifically in part above, Plaintiff reported and disclosed violations of rules, regulations and laws, and/or malfeasance, misfeasance and/or gross misconduct to persons both inside and outside of her normal chain of command, and to others having the authority to investigate, police, manage and otherwise remedy the violations of rules, regulations and laws that she reported.  Plaintiff also disclosed this information when she participated in investigations, hearings, or other agency inquiries.  Plaintiff reported malfeasance, misfeasance, and other acts specifically outlined in §112.3187(5), Florida Statutes.

50.     After reporting these matters and/or participating in investigations, hearings, or other agency inquiries, as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above including without limitation her constructive termination.

51.     The actions against Plaintiff, including without limitation her constructive discharge, are causally related to her reports/objections set forth above in which she reported violations of rules, regulations or laws, and/or malfeasance, misfeasance or gross misconduct, and/or her participating in investigations, hearings or other inquiries, specified in part above.

52.     The actions of all employees within Defendant who affected Plaintiff's employment adversely did so at least in part in retaliation against her for her "whistleblowing" activities.

53.     As a direct and proximate result of the actions taken against her by Defendant, Plaintiff has suffered injury, including but not limited to past and future wage losses, loss of benefits, loss of the capacity for the enjoyment of life, emotional pain and suffering and other

tangible and intangible damages.  These damages have occurred in the past, are occurring at present and will occur in the future.  Plaintiff is entitled to injunctive relief.

### COUNT II
### RACE DISCRIMINATION

54.     Paragraphs 1 through 45 are realleged and incorporated herein by reference.

55.     This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes and 42 U.S.C. §2000e et seq.

56.     Plaintiff has been the victim of discrimination on the basis of Plaintiff's race in that Plaintiff was treated differently than similarly situated employees of Defendants who are white and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's race.

57.     Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.   Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

58.     Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

59.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

60.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein lead, at least in part, to Plaintiff's termination on contrived allegations.

61.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of Chapter 760, Florida Statutes.

62.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief and punitive damages.

## COUNT III
### RETALIATION – Chapter 760

63.     Paragraphs 1 through 45 are realleged and incorporated herein by reference.

64.     Defendant is an employer as that term is used under the applicable statutes referenced above.

65.     The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting Plaintiff under Chapter 760, Florida Statutes, and other statutory provisions cited herein.

66.     The foregoing unlawful actions by Defendant were purposeful.

67.     Plaintiff voiced opposition to unlawful employment practices during Plaintiff's employment with Defendant and was the victim of retaliation thereafter, as related in part above.

68.     Plaintiff is a member of a protected class because Plaintiff reported unlawful employment practices and was the victim of retaliation thereafter.  There is thus a causal

connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

69.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent. Plaintiff is entitled to punitive damages and to injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)     that process issue and this Court take jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff awarding all legally-available damages for emotional pain and suffering to Plaintiff from Defendant for Defendant's violations of law enumerated herein.

(e)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(f)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(g)     award Plaintiff interest where appropriate; and

(h)     grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:  (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing has been furnished to all counsel of record this 29th day of December, 2022.

/s/ Marie A. Mattox
Marie A. Mattox